The People of the State of New York, Respondent, v Richard Balsano, Appellant.

Fourth Department, February 20, 1976

*Boreanaz, Ne Moyer & Baker (Harold Boreanaz* of counsel), for appellant.

*Edward C. Cosgrove, District Attorney (William Balthasar* of counsel), for respondent.

GOLDMAN, J. Defendant stands convicted of the crime of unlawful imprisonment in the first degree. He is accused of having forced a female college student to get into his automobile and having driven her about the area for a period of 45 minutes to an hour. Complainant testified that during that time he made sexual advances to her. She refused to comply with his demands and he released complainant without physically harming her. Upon alighting from the automobile she noted the license number of the vehicle which was in fact the defendant's automobile. Defendant testified in his own behalf and steadfastly denied any participation in the matter. He claimed that he was out of the county at the time, attending a race track, and he presented an alibi witness to corroborate his story. There was no witness to the alleged event.

Defendant-appellant urges three grounds of reversible error. His first and principal claim is that the trial court erred when it prevented the defense from cross-examining the complainant concerning her photographic identification of the defendant. We agree that the trial court should have permitted this line of questioning.

In his opening statement the defense alluded to the fact that the police had shown photographs to the complainant. During cross-examination of complainant the court, upon the prosecutor's objection on at least five occasions, enforced a total ban of all mention of photographic identification, stating "I want to make it clear now and forever that any reference to identification by photographs of this witness either by the prosecution or by you, the Court will not admit". The court

also refused defendant's request to make an offer of proof concerning "the use of photographs assisting her in identification". Respondent urges that the court properly barred mention of photographs because the record "seemed to indicate" that they would have been prejudicial to the defense if introduced, citing *People v Caserta* (19 NY2d 18). Respondent's reliance on *Caserta* is misplaced. *Caserta* and like cases have been cited for the "settled" rule that "a witness may not testify to an extrajudicial identification of a photograph of the defendant" *(People v Griffin,* 29 NY2d 91, 93, citing *People v Baker,* 23 NY2d 307, 323; *People v Christman,* 23 NY2d 429, 433; *People v Wright,* 21 NY2d 1011, 1012; see, also, Denzer, Practice Commentary to CPL 60.25, McKinney's Cons Laws of NY, Book 11A, pp 241-242); but the rule needs qualification. Its rationale, as explained in *Caserta* at page 21, is that "not only is it readily possible to distort pictures as affecting identity, but also where the identification is from photographs in the rogues' gallery (even though the name or number on the picture has been exscinded) the inference to the jury is obvious that the person has been in trouble with the law before". Thus the *Caserta* rule has no proper application in a case where, as here, the defendant chooses to elicit testimony about identification from police photos in the hope and with the intention of showing that the witness was mistaken. We conclude that the questions should not have been precluded and the court erred in barring them.

Appellant offers a different explanation for the court's rulings on the photographs. He states: "[i]t appears as if defense counsel's right to question in this area was foreclosed by the Trial Judge because counsel failed to request a *Wade* hearing prior to trial". This cannot be the reason for the court's rulings. A *Wade* hearing is the appropriate means for determining whether a pretrial identification procedure complied with due process and right to counsel guarantees, but the accuracy of an eyewitness identification remains a question of fact for the jury (Judge NATHAN R. SOBEL, Assailing The Impermissible Suggestion: Evolving Limitations On The Abuse Of Pre-Trial Criminal Identification Methods, 38 Brooklyn L Rev 261, 319-320; cf. *People v Hinds,* 40 AD2d 786; *People v Richardson,* 36 AD2d 25, 28). Defendant's failure to test the constitutionality of the identification procedure should not in any way bar him from testing the credibility of the identifying witness.

It remains to inquire whether the error is so serious as to have affected defendant's right to a fair trial and, therefore, is of reversible quality. We agree with appellant that the total prohibition of cross-examination on the issue of photographic identification worked a denial of due process and violated fair trial guarantee. We have stated that "[t]he right to cross-examination is * * * one of the essential elements of a fair trial" (Matter of Heckt v City of Lackawanna, 44 AD2d 763, citing Hecht v Monaghan, 307 NY 461; Matter of Phelka v Levine, 41 AD2d 982; Matter of Erdman v Ingraham, 28 AD2d 5). In the instant case cross-examination was not merely limited but totally precluded as to an important aspect of the People's proof on the identity issue. Once it is concluded that an essential element of a fair trial is missing, there must be a reversal, regardless of whether a fair trial would have produced the same result. In People v Crimmins (36 NY2d 230, 238) the court stated: "[I]f in any instance, an appellate court concludes that there has been such error of a trial court, such misconduct of a prosecutor, such inadequacy of defense counsel, or such other wrong as to have operated to deny any individual defendant his fundamental right to a fair trial, the reviewing court must reverse the conviction and grant a new trial, quite without regard to any evaluation as to whether the errors contributed to the defendant's conviction. The right to a fair trial is self-standing and proof of guilt, however overwhelming, can never be permitted to negate this right."

Appellant's second claim of prejudicial error was the trial court's permitting "cross-examination on intimate details of a previous conviction which allowed the prosecution to establish a propensity to commit crime in general". It appears that defendant, who admitted participation in two crimes, was granted youthful offender treatment in connection with one of the offenses. A youthful offender adjudication does not bar the prosecution from cross-examining the defendant regarding the underlying acts (People v Vidal, 26 NY2d 249, 253), and it is not claimed that the prosecutor questioned about the fact of the adjudication itself. Nor does it appear that the aim of the questions regarding the two thefts was "to establish a propensity to commit crime in general" (see People v Sandoval, 34 NY2d 371, 377).

We reach a different conclusion with respect to the prosecutor's interrogation about a stabbing incident in which defendant was involved seven and one-half years earlier, when

defendant was 16 years old. The prosecutor, over repeated objections by defendant, elicited an admission that defendant had stabbed a man with a clam knife at a dance. "Lapse of time, however, will affect the materiality if not the relevance of previous conduct. The commission of an act of impulsive violence [as this act appears to have been], particularly if remote in time, will seldom have any logical bearing on the defendant's credibility, veracity or honesty at the time of the trial" *(People v Sandoval,* 34 NY2d 371, 376-377, *supra).* The questioning of defendant about this offense was unnecessary to the development of the prosecutor's case and certainly impaired the defendant's right to a fair trial.

Appellant claims that notwithstanding the court's sustaining his several objections, the prosecutor prejudiced him by asking "[y]ou currently have another charge pending against you, is that correct?". It is clearly improper to ask a defendant whether he stands indicted of other crimes *(People v Malkin,* 250 NY 185, 197; *People v Reingold,* 44 AD2d 191, 195; cf. *People v Rivera,* 26 NY2d 304, 307). Upon the new trial the prosecutor should avoid and not repeat this line of questioning.

The final argument of defendant is that the prosecutor's summation was so inflammatory as to violate the fair trial guarantee. There were at least eight objections sustained during the summation, and after defendant moved for a mistrial the prosecutor continued in the same excessive manner. He made references to the failure of defendant to have called a witness, remarking that the witness was not called because his testimony would have been favorable to the prosecution. Respondent cites *People v Rodriguez* (38 NY2d 95) as support for the prosecutor's statements. The witness was not in the control of defendant, as in *Rodriguez,* and the general rule that there must be no comment upon a defendant's failure to come forward with evidence is the principle which should be followed in the case at bar (cf. *People v Leonardo,* 199 NY 432, 446; *People v Hovey,* 92 NY 554, 559-560; 2 Wigmore, Evidence [McNaughton rev], §§ 285-291; 1 Wharton, Criminal Evidence [13th ed], § 148, pp 249-252). The court properly admonished the prosecutor and gave curative instructions to the jury. Because of the rulings and instructions of the court the prosecutor's actions standing alone would be insufficient to require another trial. However, at such trial the prosecution should not repeat these inflammatory remarks.

The cumulative prejudicial effect of the errors requires that judgment should be reversed and a new trial granted.

CARDAMONE, J.P., MAHONEY, and WITMER, JJ., concur.

Judgment unanimously reversed on the law and facts and a new trial granted.