■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v COREY FORD, Appellant. [621 NYS2d 309] —Judgment, Supreme Court, Bronx County (Frank Diaz, J.), rendered December 6, 1990, convicting defendant, after a jury trial, of murder in the second degree and criminal possession of a weapon in the second and third degrees, and sentencing him, as a second felony offender, to concurrent terms of 20 years to life, 5 to 10 years, and 3½ to 7 years, respectively, unanimously affirmed. Order, same court and Justice, entered May 5, 1994, which denied defendant's motion to vacate the same judgment of conviction, unanimously affirmed.

Audiotapes, notes, and worksheets made by medical examiners in connection with autopsy reports are not *Rosario* material *(People v Smith,* 206 AD2d 102; *People v Nova,* 206 AD2d 132; *accord, People v Washington,* 196 AD2d 346 [2d Dept], *lv granted* 83 NY2d 1008). We have reviewed the evidence submitted in connection with the motion to vacate judgment and while we agree (and see no need to remand for presentation of

further evidence) that the Office of the Chief Medical Examiner (OCME) works closely with the police and prosecution and often generates scientific evidence relevant to issues other than cause of death, we find this to be an insufficient basis on which to take the unprecedented step of extending *People v Rosario* (9 NY2d 286) to cover materials in the sole possession of a non-law-enforcement agency. Unlike law enforcement agencies, OCME has no adversarial position with regard to criminal defendants, and does not afford the People "control" of its records merely by cooperating in investigations.

In any event, we also find that the undisclosed documents in this case were not *Rosario* material to begin with. Two of the three items were prepared by a medical examiner who did not testify, and we reject the argument that they somehow became *Rosario* material vicariously *(Matter of Christopher W., 202 AD2d 305)*. The third item was an administrative processing form devoid of information *(see, People v Watkins, 157 AD2d 301, 312-314)*.

The court properly replaced a sworn juror, over objection, when the juror twice stated that she could not be fair because she recognized defendant's mother as a person she had often seen, and possibly greeted, in her neighborhood *(People v Buford, 69 NY2d 290, 299; People v Galvin, 112 AD2d 1090)*.

Defendant was not deprived of a fair trial when the prosecutor asked a defense witness whether defendant had a drug rivalry with the deceased. This question was obviously relevant to motive *(People v Cedeno, 175 AD2d 767, 769, lv denied 79 NY2d 854)*, provided that it was asked in good faith *(People v Alamo, 23 NY2d 630, 633, cert denied 396 US 879)*. While defendant made a generalized objection to the question, he did not challenge the good faith basis of the inquiry *(see, People v Johnson, 186 AD2d 356, lv denied 81 NY2d 763)*, and therefore cannot complain that the People have first revealed their good faith basis on the appeal. Concur—Sullivan, J. P., Ellerin and Asch, JJ.

Kupferman, J., concurs in a memorandum as follows: While I agree with the views expressed by Presiding Justice Murphy in his dissent in *People v Smith* (206 AD2d 102, 114), I concur in the result in the instant case in order to avoid the fiasco that derived from the decision in *People v Antommarchi* (80 NY2d 247) as limited by *People v Mitchell* (80 NY2d 519).

In a homicide case, there is nothing more significant in the way of information for a defendant than the Medical Examiner's report and its underlying material. Call it *Rosario* mate-

rial if you will, but a rose by any other name is still a rose. However, such rule should be prospective only.